# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARCELL WALKER,

                Plaintiff,

v.

OFFICER KOBE MOSSMAN,
OFFICER RYAN KRANZ,
DETECTIVE SHAWN HALVERSON,
CITY OF MILWAUKEE POLICE
DEPARTMENT, and CITY OF
MILWAUKEE,

                Defendants.

Case No. 24-CV-1347-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff Marcell Walker ("Walker"), an inmate currently confined at Fox Lake Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. The Court initially screened the complaint and permitted Walker to proceed against two Defendants, Officer Kobe Mossman ("Officer Mossman") and Officer Ryan Kranz ("Officer Kranz") but granted him the optional leave to amend if he wanted to cure deficiencies in his claims against Defendant Detective Shawn Halverson ("Detective Halverson"). ECF No. 9. After Walker failed to amend his complaint to clarify Detective Halverson's role in the alleged events, *id.* at 7, the Court dismissed Walker's claims against Detective Halverson without prejudice and ordered that the complaint be served on Officers Mossman and Kranz. ECF No. 10. Officers Mossman and Kranz were served and have appeared through counsel. ECF Nos. 13, 14.

Around the same time, Walker moved to amend his complaint. ECF No. 12. The Court granted him leave to do so, accepted his proposed amended complaint as the operative complaint in this action, and stayed Officers Mossman and Kranz's deadline to respond to the complaint pending the Court's screening of the amended complaint. ECF Nos. 17, 18 (amended complaint). This Order screens the amended complaint and also addresses (and denies) Walker's second motion for appointment of counsel, ECF No. 19.

## 2. SCREENING STANDARD

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous" or "malicious," that "fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A "frivolous" complaint "lack[s] an arguable basis either in law or fact." *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). A complaint is *factually* frivolous if its allegations are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." *Id.* (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)). Allegations that are merely "unlikely," "improbable," or "strange" do not meet this standard. *Id.* (quoting *Denton*, 504 U.S. at 33). A claim is *legally* frivolous if it is "based on an indisputably meritless legal theory." *Id.* (quoting *Neitzke*, 490 U.S. at 327–28). "A malicious complaint is one brought for purposes of harassment."

*Heard v. Blagojevich*, 216 F. App'x 568, 570 (7th Cir. 2007) (quoting *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003)).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

3. **FACTUAL ALLEGATIONS**

Officers Mossman and Kranz and Detective Halverson work for the City of Milwaukee Police Department ("MPD"). *See* ECF No. 18 at 4.

Plaintiff alleges that Detective Halverson was Officers Mossman and Kranz's supervising officer at the time of the events in question. *Id.* at 3.

On April 12, 2024, at approximately 10:32 PM, Walker was driving a black 2014 Dodge Dart northbound on South 22nd Street in Milwaukee, "lawfully operating the vehicle with no visible violations." *Id.* Officers Mossman and Kranz pulled Walker over at 22nd Street and Mineral Street, claiming that Walker's license plates were expired. *Id.* Walker stopped and opened his car door to allow Officers Mossman and Kranz to identify him. *Id.*[1]

Walker states that Officers Mossman and Kranz and Detective Halverson "did not run [his] plates until 12:34 AM" on the following day, April 13, 2024. *Id.* (citing ECF No. 1-1 at 2, vehicle registration document from Wisconsin Department of Justice Crime Information Bureau).[2] Walker

---

[1]Walker omits from his amended complaint what attachments to his original complaint show: that after the officers identified him, he drove off, leading officers on a high-speed chase, ultimately ending in a collision between Walker's vehicle and two other vehicles. ECF No. 9 at 4 (citing ECF No. 1-1 at 1).

"Walker was charged on April 17, 2024 with various violations of state law including fleeing a police officer and causing bodily harm, recklessly endangering safety, possession with intent to distribute cocaine, possession of a firearm while a convicted felon, and felony bail jumping." *Id.* (citing *State of Wisconsin v. Marcel Delain Walker*, Case No. 2024CF001792 (Milwaukee Cnty. Cir. Ct. 2024), https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CF001792&countyNo=40&index=0&mode=details (last visited Nov. 13, 2025) (the "Milwaukee County Case")). Walker pleaded guilty to some of the charges and was sentenced in that case to seventy-five months in prison. Milwaukee County Case, June 6 and July 2, 2025 docket entries.

[2]Walker references attachments to his original complaint, but has failed to attach them to his amended complaint as the Court instructed. ECF No. 9 at 9–10 ("The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint." (citation omitted)). However, the Court will consider these documents by taking judicial notice of its own docket. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

says that this "indicat[es that] the stop lacked reasonable suspicion." *Id.* Walker alleges that dashboard camera footage from Officers Mossman and Kranz's vehicle "records [a] conversation between Officer Kranz and supervisor [possibly Detective Halverson] stating [that Walker's] vehicle was a 'target' but later admitted [that Walker] was not the intended target." *Id.* Walker says that this "indicate[s] a pretextual basis for the stop." *Id.*

Walker further alleges that Officers Mossman and Kranz "falsified [the] police report" of Walker's traffic stop and that Detective Halverson "approved" it. *Id.* (citing ECF No. 1-1 at 1). The "police report" that Walker cites actually appears to be the probable cause statement given by one of the officers related to the criminal complaint in the Milwaukee County Case. *See* ECF No. 1-1 at 1. This document states that at 10:32 PM on April 12, 2024, Officers Mossman and Kranz observed Walker's vehicle, and that a check of Walker's vehicle's plates with the Wisconsin Department of Transportation "revealed the vehicle's registration to be expired," without stating what time the plates check took place. *Id.* The next sentence states that the officers activated their emergency lights and siren to signal Walker to stop, and that he "initially pulled over." *Id.*

Walker alleges that the above-described violations occurred as a result of City of Milwaukee "policies or customs, including failure to mandate consistent Body Worn Camera (BWC) and dash[board] cam[era] use, inadequate training on reasonable suspicion . . . , and tolerance of falsified reports." ECF No. 18 at 4.

In addition to alleging that the traffic stop occurred without reasonable suspicion, Walker alleges that the stop was unlawfully motivated by racial profiling. *Id.* He says that MPD has a pattern of disproportionate stops of Black drivers, citing "2018–2023 Crime and Justice

Institute and ACLU reports" that show that Black drivers are stopped at a rate 4.5 to 9.5 times higher than white drivers. *Id.* He also says that "MPD's federally funded TSU program[] disproportionately targets Black drivers as shown by stop rates and low hit rates for searches (where Black drivers are 20% less likely to have contraband)." *Id.* He says the "City of Milwaukee's failure to train officers on non-discriminatory policing caused the violation."

Walker additionally argues that the asserted violations of his constitutional rights occurred pursuant to City of Milwaukee or MPD policies or customs of "fail[ing] to mandate consistent body worn camera . . . and dash[board] cam[era] use, inadequate training on reasonable suspicion and pursuit protocols, and tolerance of falsified reports." *Id.*

Walker invokes various legal theories, which the Court discusses below. *Id.* at 4–6. He states that the above events caused him "physical injuries, property damage, . . . emotional distress," and "legal consequences," presumably referring to the charges in the Milwaukee County Case. *Id.* at 5. He seeks compensatory damages for "damage to property," "restitution," "medical costs of [himself] and victims" (presumably of the chase that Walker led in the Milwaukee County Case), "commissary" costs during pretrial detention and his term of imprisonment, and "childcare for [his daughter]," as well as punitive damages. *Id.* at 6. He also seeks for Officers Mossman and Kranz and Detective Halverson to be fired, and an injunction to mandate MPD officers to always have their body-worn and dashboard cameras active, to receive anti-bias training, and to "limit instances of high-speed pursuits." *Id.*

Page 6 of 20

Case 2:24-cv-01347-JPS | Filed 11/13/25 | Page 6 of 20 | Document 21

4.  **ANALYSIS**

The Court discerns the following potential claims in Walker's complaint:

- A Fourth Amendment claim for an unlawful seizure;
- A claim for an unlawful seizure under Article One, Section Eleven of the Wisconsin Constitution;
- A claim based on an alleged fabricated statement in the police report, based in either the Fourth or the Fourteenth Amendment;
- A Fourteenth Amendment equal protection claim based on alleged racial profiling; and
- A claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) ("*Monell*").

The Court examines each claim in turn.

**4.1  Unlawful Seizure Claims**

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Whren v. United States*, 517 U.S. 806, 809 (1996). Therefore, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Id.* at 809–10 (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), *United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976), and *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). "Thus, whenever a police officer decides to stop a vehicle, the stop must meet the reasonableness requirements of the Fourth Amendment." *United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018) (citing *Prouse*, 440 U.S. at 663). A

"decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810 (citing *Prouse*, 440 U.S. at 659 and *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*)); *see also Rodriguez-Escalera*, 884 F.3d at 667 ("To pull a car over for a brief investigatory stop, a police officer must have 'at least [an] articulable and reasonable suspicion' that the particular person stopped is breaking the law." (quoting *Prouse*, 440 U.S. at 663)).

Walker's allegations support a Fourth Amendment unlawful seizure claim against Officers Mossman and Kranz. He alleges that the officers pulled him over for having expired license places, but that his plates were not visibly expired (because he was "lawfully operating the vehicle with no visible violations," ECF No. 18 at 3) and that the two officers only ran a check of his license plates after arresting him, and therefore manufactured this justification for the traffic stop only after initiating it. If true, these facts could indicate that Officers Mossman and Kranz lacked reasonable suspicion to pull over Walker at the time they initiated the traffic stop. *See United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007) (noting that reasonable suspicion is an objective inquiry requiring consideration of "the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect" (quoting *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006))).

Walker's allegations also arguably support a Fourth Amendment unlawful seizure claim against Detective Halverson on a theory of supervisory liability. "In order for a supervisor to be liable, they must be 'personally responsible for the deprivation of the constitutional right.'" *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001)). "To show personal

involvement, the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Id.* (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir. 1988)).

Walker alleges that Officer Kranz spoke with a supervisor, possibly Detective Halverson, who said that Walker's vehicle was a target but later admitted that Walker was not the intended target for the stop. If Detective Halverson knew that there was not reasonable suspicion to pull Walker over but directed or permitted Officers Mossman and Kranz to pull him over anyway, this would violate Walker's Fourth Amendment right to be free of unreasonable seizures. In the interest of construing Walker's claims liberally, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the Court will permit Walker to proceed on this claim against Detective Halverson.

The Court noted in its prior screening that "Article One, Section Eleven of the Wisconsin Constitution is nearly identical in language to the Fourth Amendment and would accordingly be applicable, if redundant, here." ECF No. 9 at 9 n.6 (citing *State v. Young*, 717 N.W.2d 729, ¶ 30 (Wis. 2006) ("Typically, [Wisconsin] court[s] interpret[] Article [1], Section 11 of the Wisconsin Constitution in tandem with the Fourth Amendment jurisprudence of the United States Supreme Court.")). Walker now raises a claim for an unreasonable seizure under the Wisconsin Constitution in the amended complaint. ECF No. 18 at 5. For the same reasons stated above, at this time the Court will permit him to proceed on this claim against Officers Mossman and Kranz and Detective Halverson. The Court saves for later

resolution whether Walker's requested remedies are available under the Wisconsin Constitution.³

The Court additionally has already noted that "[t]he Milwaukee County Case, while stemming from the April 12, 2024 incident, does not appear to be factually related to any of [Walker's] claims in this case, because each of the charges relates to [Walker's] actions while fleeing police officers after first being stopped." ECF No. 9 at 7 n.4. It accordingly stated that this action does not appear to be subject to a stay under *Younger v. Harris*, 401 U.S. 37 (1971). *Id.* Because Walker has pleaded guilty to various charges in the Milwaukee County Case, *see supra* note 1, the potentially applicable doctrine is now *Heck v. Humphrey*, which precludes civil suits that "would necessarily imply the invalidity of [a] conviction or sentence." *Hill v. Murphy*, 785 F.3d 242, 248 (quoting *Heck*, 512 U.S. 477, 484–85 (1994)). At this time, the Court does not believe that Walker's Fourth Amendment unlawful seizure claim is *Heck*-barred, as the initial stop could be held unlawful without disturbing Walker's convictions related to the pursuit that followed. However, the Court welcomes motion practice on this matter if appropriate.

### 4.2 Fabricated Evidence Claim

"Courts in this Circuit recognize a standalone federal [Fourteenth Amendment] due process claim for evidence fabrication—separate and

---

³The Court is also doubtful that Walker could recover as compensatory damages commissary costs, childcare costs, and victims' medical costs, or be awarded his requested injunction to limit high-speed pursuits. This is due to the doctrine of *Heck v. Humphrey* discussed below, and/or lack of standing, *see Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010) ("[A] plaintiff must demonstrate standing separately for each form of relief sought." (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000))). However, the Court leaves this question for later resolution.

Page 10 of 20

Case 2:24-cv-01347-JPS   Filed 11/13/25   Page 10 of 20   Document 21

apart from any malicious prosecution claim—when fabricated evidence is used to obtain a wrongful conviction or deprive a person of his liberty." *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 553 (N.D. Ill. 2020) (collecting cases); *see also Whitlock v. Brueggeman*, 682 F.3d 567, 580 (7th Cir. 2012) ("We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way."). When the alleged fabrication results in a pretrial detention, the Fourth Amendment provides the basis for the claim. *Lewis v. City of Chicago*, 914 F.3d 472, 476–77 (7th Cir. 2019) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 918–19 (2017)).

Irrespective of which amendment applies here, the Court finds that Walker cannot proceed on a claim that his constitutional rights were violated when Officers Mossman and Kranz and/or Detective Halverson allegedly fabricated, or permitted to be fabricated, the statement in the police report that they checked Walker's license plates before initiating a traffic stop. Presumably Walker's theory, which the Court must accept as true at this stage, is that the three police officers lied by omission by not indicating in the police report that they only checked his license plates after initiating the traffic stop (or what time they did check his license plates). *See supra* Section 3. But as *Baker*, *Whitlock*, and *Lewis* explain, this type of claim requires the plaintiff to show that fabricated evidence was used in a way that brought about a deprivation of liberty or a wrongful conviction. It is not clear how the officers' alleged fabrication resulted in an unlawful traffic stop when the allegedly fabricated statement in the criminal complaint (what Walker characterized as the police report) came *after* Walker's arrest. *See* ECF No. 1-1.

It appears that Walker primarily takes issue with the allegedly delayed license plates check as the *basis* for his stop, more so than the officers' later statement to this effect. This theory of liability is amply covered by an unlawful seizure claim as discussed above in Section 4.1. To the extent Walker is attempting to challenge the use of any allegedly false statement in the criminal complaint/police report to secure a conviction in the Milwaukee County Case, such a claim is plainly barred by *Heck. See Hill*, 785 F.3d at 248.

For all these reasons, Walker's claim based on alleged fabrication of evidence will be dismissed. The dismissal will operate with prejudice because amendment would be futile, as this claim is legally baseless and cannot proceed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (citing *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)).

### 4.3 Fourteenth Amendment Equal Protection Claim

A plaintiff's claim that he was targeted for arrest on the basis of his race—functionally, a claim that he was denied the Fourteenth Amendment's guarantee of equal protection—requires him to "demonstrate intentional or purposeful discrimination" on the part of the arresting officers. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (quoting *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir. 1980) (per curiam)). Showing that the officers acted with a discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Walker alleges in a conclusory manner that he was arrested because of his race and/or unlawful racial profiling. He does not allege specific facts showing that Officers Mossman and Kranz acted with intentional or purposeful discrimination, but he has alleged that MPD has a pattern of disproportionately stopping Black drivers. Although Walker will likely need to show more to establish intentional or purposeful discrimination and succeed on an equal protection claim, at this time, in the interest of liberally construing the complaint, *Haines*, 404 U.S. at 520–21, the Court will permit him to proceed on this claim against Officers Mossman and Kranz.

Walker includes no facts demonstrating how Detective Halverson discriminated against him on the basis of his race—indeed, the complaint suggests that Detective Halverson was not on the scene and therefore could not have known Walker's race (unless one of the other two officers informed him of this, which is also not alleged). Walker's equal protection claim against Detective Halverson will be dismissed with prejudice; amendment would be futile because Walker has already had two chances to amend his complaint, and in neither instance raised any allegations ascribing a discriminatory motive to Detective Halverson. *Runnion*, 786 F.3d at 519 (citation omitted).[4]

---

[4]Plaintiff briefly references Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. ECF No. 18 at 5. This statute prohibits race discrimination in federally funded programs. 42 U.S.C. § 2000d. Walker asserts that MPD's TSU, or Traffic Safety Unit, is one such program. ECF No. 18 at 5; *see also Traffic Safety Unit*, MILWAUKEE POLICE DEP'T, https://mpdtsu.org/ [perma.cc/4RF6-URAL] (last visited Oct. 23, 2025).

Walker may simply be mistaking the Fourteenth Amendment's equal protection guarantee for this statute. To the extent he is attempting to also raise a Title VI claim, such a claim cannot proceed against Officers Mossman and Krantz or Detective Halverson, as such a claim "can only be brought against the *recipient* of federal grant money, not an individual." *C.S. v. Couch*, 843 F. Supp. 2d 894, 905

### 4.4 *Monell* Claim

A *Monell* claim requires Walker to plead that the officer defendants violated his constitutional rights because of or pursuant to an official policy or custom of the respective municipal defendants. *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (plaintiff must plead "an action pursuant to a municipal policy" (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404–07 (1997))).

Walker has alleged that both his unlawful seizure and his discriminatory arrest occurred as a result of City of Milwaukee policies or customs. This is enough at this stage to proceed on a *Monell* claim. The claim will proceed only against the City of Milwaukee, however, because "a police department is not a suable entity." *Lamb v. Pleasant Prairie Police Dep't*, No. 23-CV-614-PP, 2024 WL 3410792, at *6 (E.D. Wis. July 15, 2024). MPD therefore will be dismissed with prejudice from this action.[5]

---

n.14 (N.D. Ind. 2011) (citing *Smith v. Metro Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019–21 (7th Cir. 1997). A Title VI claim also cannot proceed against MPD and the City of Milwaukee because Walker has not alleged that the TSU *as a program* was discriminatory towards him, but rather that "one of [MPD/City of Milwaukee] employees discriminat[ed] against [him]," so the entities "cannot be held liable on the ground of *respondeat superior* for an employee's violation of the statute." *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 694 (N.D. Ill. 2019) (citing *Smith* 128 F.3d at1023–24 and quoting *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012)).

[5] If Walker cannot ultimately demonstrate that Officers Mossman and Kranz or Detective Halverson violated his constitutional rights, then any *Monell* claim will also fail. *Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012) ("A predicate to recovery under *Monell* is, of course, a constitutional injury." (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).

**5. SECOND MOTION TO APPOINT COUNSEL**

Walker renews his request for a court-appointed attorney. ECF No. 19; ECF No. 9 at 10 (denying first request without prejudice). As a civil litigant, Walker has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018) (citing *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc)). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made a reasonable attempt to secure counsel; and (2) "the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt*, 503 F.3d at 655). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018) (citing *Pruitt*, 503 F.3d at 654).

Walker represents that he has contacted at least three lawyers who declined to represent him. ECF No. 19 at 2. (citing ECF No. 19-1). He seeks counsel because he lacks legal training and is relying on a fellow inmate to help him draft his submissions, but that inmate will soon be relocated. *Id.* He argues that this case is complex and will require "vast amounts of data" related to alleged racial profiling in traffic stops that "lawyers for the defendants[] have historically went to great lengths to shield from the public's eye." *Id.* (citing *Collins v. Milwaukee*, No. 17-CV-234, 2017 WL 10505094 (E.D. Wis. Oct. 3, 2017)).

Accepting Walker's contacts to three attorneys as sufficient on this prong of the analysis, he has not otherwise persuaded the Court that appointment of counsel is appropriate here. He asserts that his lack of legal

Page 15 of 20

Case 2:24-cv-01347-JPS    Filed 11/13/25    Page 15 of 20    Document 21

training and the supposed complexity of this case entitle him to counsel, but "[a]lmost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014); *see also Pruitt*, 503 F.3d at 655 ("The question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant." (quotation marks omitted)). While it is unfortunate that the inmate who was helping Walker with his filings will be relocated, this also does not entitle Walker to counsel, because this struggle is not unique—many inmates find themselves relying on jailhouse lawyers who are later relocated by the state for reasons far beyond the Court's control.

As for Walker's contention that he needs an attorney to navigate the vast amounts of data that this case is sure to require, the Court is unconvinced. The Court has permitted him to proceed past screening on his equal protection claim specifically because he referenced information in his amended complaint (Crime and Justice Institute and ACLU reports) that purportedly shows that MPD has a pattern of disproportionately stopping Black drivers. In other words, Walker seems to already have the information that he says he needs an attorney's help to seek and review in this case. The Court believes that Walker is capable of seeking and reviewing appropriate discovery in this case without the assistance of counsel. Walker's motion accordingly will be denied.

6. **CONCLUSION**

As explained above, Walker may proceed on the following claims:
- A Fourth Amendment claim for an unlawful seizure against Officers Mossman and Kranz and Detective Halverson;

Page 16 of 20

- A claim for an unlawful seizure under Article One, Section Eleven of the Wisconsin Constitution against Officers Mossman and Kranz and Detective Halverson;

- A Fourteenth Amendment equal protection claim based on alleged racial profiling against Officers Mossman and Kranz; and

- A claim for municipal liability under *Monell* against the City of Milwaukee.

MPD is not a proper defendant and will be dismissed with prejudice. Walker's fabricated evidence claim will be dismissed with prejudice as to all Defendants and his Fourteenth Amendment equal protection claim will be dismissed with prejudice as to Detective Halverson.

Counsel from the City of Milwaukee has already appeared for Officers Mossman and Kranz and therefore has been served with Walker's amended complaint through CM/ECF. FED. R. CIV. P. 5(b)(2)(E). Pursuant to Federal Rule of Civil Procedure 4(c)(3), the Court will order the U.S. Marshals Service to serve a copy of the amended complaint and this Order on the remaining Defendants, Detective Halverson and the City of Milwaukee. All Defendants shall respond to the amended complaint.

Accordingly,

**IT IS ORDERED** that the City of Milwaukee Police Department be and the same is hereby **DISMISSED with prejudice** from this action;

**IT IS FURTHER ORDERED** that Plaintiff Marcell Walker's fabricated evidence claim be and the same is hereby **DISMISSED with prejudice** as to Defendants Officer Kobe Mossman, Officer Ryan Kranz, Detective Shawn Halverson, and the City of Milwaukee;

Page 17 of 20

Case 2:24-cv-01347-JPS    Filed 11/13/25    Page 17 of 20    Document 21

**IT IS FURTHER ORDERED** that Plaintiff Marcell Walker's Fourteenth Amendment equal protection claim be and the same is hereby **DISMISSED with prejudice** as to Defendant Detective Shawn Halverson;

**IT IS FURTHER ORDERED** that Plaintiff Marcell Walker's second motion to appoint counsel, ECF No. 19, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that that the U.S. Marshals Service shall serve a copy of the amended complaint, ECF No. 18, and this Order upon Defendants **Detective Shawn Halverson** and **the City of Milwaukee** pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee; and

**IT IS FURTHER ORDERED** that Defendants Officer Kobe Mossman, Officer Ryan Kranz, Detective Shawn Halverson, and the City of Milwaukee shall respond to the amended complaint; and

**IT IS FURTHER ORDERED** that if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless

it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

> Plaintiff will be required to submit all correspondence and legal material to:
>
> > Office of the Clerk
> > United States District Court
> > Eastern District of Wisconsin
> > 362 United States Courthouse
> > 517 E. Wisconsin Avenue
> > Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.